IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-312-BO-RN

| | |
|---|---|
| KEMPTON HEALEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| UNITED HEALTHCARE ) | |
| INSURANCE and UNITED ) | |
| HEALTHCARE SERVICES, INC., ) | |
| ) | |
| Defendants. ) | |

This cause comes before the Court on cross-motions for summary judgment. Defendant moved for summary judgment [DE 17] and filed a statement of material facts [DE 17-2], plaintiff responded in opposition [DE 28], and defendant replied [DE 34]. Plaintiff moved for summary judgment [DE 19] and filed a statement of material facts [DE 21], defendant responded in opposition [DE 25], and plaintiff replied [DE 35]. A hearing was held before the undersigned on October 16, 2025, in Raleigh, North Carolina. In this posture, the motions are ripe for decision. For the following reasons, defendant's motion for summary judgment is denied and plaintiff's motion for summary judgment is granted.

BACKGROUND

Plaintiff Kempton Healey is a beneficiary of an employee welfare benefit plan administered by defendant United [DE 17-2, ¶ 1]. Healey was diagnosed with lipedema in August 2021. [DE 17-2, ¶ 32]. Lipedema is a medical condition marked by disproportionate fat accumulation in the lower extremities. Healey attempted conservative treatments but had trouble keeping her weight under control. [DE 26, ¶¶ 24–25]. She experienced painful symptoms and

diminished quality of life. Healey's doctor recommended a series of suction-assisted lipectomies (also called "liposuction") and sent United a clinical authorization request. [DE 17-2, ¶ 15].

On September 22, 2022, United denied coverage for the proposed surgeries, stating it had not received sufficient information to determine whether the procedures were medically necessary, and requested additional information. *Id.* at ¶ 21. United also advised that the provider could schedule a peer-to-peer review or Healey could appeal the determination. Her doctor participated in a peer-to-peer review on October 12, 2022, and United issued a second denial letter on the same day, again based on insufficient information. *Id.* at ¶ 27–28. This second letter advised Healey of voluntary external review procedures.

Before pursuing an external review, Healey administratively appealed the denial. *Id.* at ¶ 30. Under the terms of the employee welfare benefit plan, United was required to issue a decision on this appeal within thirty days, making the deadline November 24, 2022. On November 21, 2022, United discovered that portions of Healey's appeal were missing from its records and reached out to Healey's provider to request that the appeal be re-faxed. *Id.* at ¶ 31. Less than twenty-four hours later, despite receiving no new fax containing the missing portions, the appeal was assigned to Dr. Donald Stepita for review. [DE 26, ¶ 61]. Stepita completed his review and issued adverse findings hours later, on the same day it was assigned to him. *Id.* at ¶ 62. At this point, Healey had exhausted her internal appeal rights and administrative remedies.

Healey submitted her request for external review on March 11, 2023, which entitled her to an independent assessment by an "independent review organization" (IRO). [DE 17-2, ¶ 40–41]. The IRO upheld United's denial of coverage. *Id.* at ¶ 45. Healey paid a total of $88,060 out of pocket to undergo the six liposuction procedures. She filed this action under ERISA, asserting that United wrongfully denied her claim for medically necessary treatment.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotation marks and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

## DISCUSSION

ERISA benefit determinations are reviewed de novo unless the insurer can show that it had discretionary authority under the terms of the governing plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The parties agree that the plan's terms give United discretionary authority and that the abuse of discretion standard therefore applies. The parties also do not dispute

3

which provisions of the plan are relevant to Healey's entitlement to benefits, so the Court's consideration is limited to determining whether United abused its discretion in denying coverage.

When determining whether a plan administrator or fiduciary abused its discretion, a court considers, but is not limited to, such factors as:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Booth v. Wal-Mart Stores, Inc. Associates Health and Welfare Plan*, 201 F.3d 335, 342–43 (4th Cir. 2000). A court cannot disturb the policy administrator's decision if it was reasonable, even if the court would have reached a different conclusion. *Id.* at 341.

At the outset, the Court considers an issue bearing on many of the *Booth* factors. It is undisputed that certain portions of Healey's appeal were missing when United denied the appeal. [DE 21, ¶ 60]. United asked for the appeal to be re-faxed but denied the appeal the next day despite receiving none of the missing portions. *Id.* at ¶¶ 61–62. United notes that Healey and her doctors had several opportunities to transmit the necessary information, but it appears neither party was particularly diligent in their communications—and while Healey had multiple opportunities to provide the full record, United did not exploit its opportunity to reconsider its decision based on the full record. As a result, United knowingly decided the appeal on an incomplete set of materials.

The Court also finds that the missing portions were material. The omitted documents include detailed provider letters, treatment history, and symptom documentation, all supporting Healey's claim. United based its denial of Healey's appeal, in part, on a lack of documentation that Healey "failed to improve after at least six months or more of conservative treatment." [DE

4

17-2 ¶ 39]. The omitted materials include such documentation, namely, a letter from Dr. Pennings describing Healey's history of conservative treatment. United should have considered the whole appeal.

A "district court may consider evidence outside of the administrative record on abuse of discretion review in an ERISA case when such evidence is necessary to adequately assess the *Booth* factors and the evidence was known to the plan administrator when it rendered its benefits determination." *Helton v. AT & T Inc.*, 709 F.3d 343, 356 (4th Cir. 2013). Although relevant to several factors, the third *Booth* factor (the adequacy of the materials considered to make the decision and the degree to which they support it) especially probes whether United failed to consider such omitted information. Given that United knew it lacked the full record, and the missing information is material to the *Booth* factors, the Court considers the entire record.

With the foregoing in mind, the Court addresses the other *Booth* factors. The first, second, and fourth factors can be reduced to the central question of whether Healey has lipedema. The first factor considers the language of the plan. The plan provides coverage for "Medically Necessary" health services, which it describes as:

- Provided for the diagnosis, treatment, cure or relief of a health condition, illness, Injury or disease.
- Except as allowed under GS 58-3-255, not for experimental, investigational, or cosmetic purposes.
- Necessary for and appropriate to the diagnosis, treatment, cure, or relief of a health condition, illness, Injury, disease or its symptoms.
- Within generally accepted standards of medical care in the community.
- Not solely for the convenience of the Covered Person, the Covered Person's family or the provider.

[DE 21, ¶ 31]. At bottom, United does not believe Healey was properly diagnosed with lipedema and construes the liposuction procedures as for cosmetic purposes. If Healey did not have lipedema, then the plan would not cover the procedures, and if she does, the plan covers them.

The second factor considers the purposes and goals of the plan. Drawing from its language, the plan's purpose is to provide coverage for medically necessary health services. Whether the denial of coverage comports with the purpose of the plan depends on the core dispute: whether Healey has lipedema. The third factor questions the adequacy of the materials considered to make the decision and the degree to which they support it. As already discussed, the omitted information was material to United's analysis and should have been considered. The fourth factor, whether United's interpretation of the plan is internally consistent, similarly depends on whether Healey has lipedema—denial of her claim is appropriate if not, and inappropriate if so.

The fifth factor is whether the decisionmaking process was reasoned and principled. United relied on internal medical policies to determine whether liposuction is a medically necessary treatment of lipedema. Healey argues that this reliance on internal policy is a departure from the language of the plan defining what services are "medically necessary," and this factor therefore weighs in her favor. United persuasively argues, however, that those internal policies merely reflect the clinical review criteria that utilization reviewers apply for consistent results across cases. Because these internal criteria naturally bear on the question of medical necessity, United's reference to them does not evidence an unreasoned or unprincipled decisionmaking process. Nevertheless, this factor weighs in Healey's favor—not only because United's denial of benefits knowing it was missing portions of the appeal evidences an unprincipled decisionmaking process—but because even considering United's internal policies, the complete record supports an award of benefits.

United's Liposuction for Lipedema Policy provides that suction-assisted lipectomy is considered medically necessary and reconstructive for the treatment of lipedema only when certain criteria are met. The letter from Dr. Pennings, omitted from the materials United considered,

6

addressed each criterion, including symptom history, failed conservative treatment, functional impairment, and medical necessity. The complete record is replete with evidence satisfying the criteria. More to the point, the complete record shows that the liposuction satisfied the plan's definition of "medically necessary." It treated lipedema, was not cosmetic, and arose only as a substitute for failed conservative treatment.

The sixth factor inquires whether United's decision is consistent with the procedural and substantive requirements of ERISA.

> Healey argues that United did not comply with the procedural and substantive requirements of ERISA because (1) United "materially shift[ed] the rationale for denial without proper notice or opportunity for response," (2) United's review was based on an incomplete record, (3) Dr. Stepita is not licensed in North Carolina and not experienced with treating lipedema, and (4) United did not consider the additional materials Healey submitted with her external review.

[DE 25, p. 17]. The assertion that United materially shifted its rationale for denial is unconvincing. The earlier denials were based on insufficient information and the later denials were based on United's perceived deficiencies with the information Healey provided in response. As for the additional materials Healey submitted with her external review, United retained discretion to reconsider its earlier denials but was not obligated to consider the additional materials.

United assigned Healey's appeal to Dr. Stepita. "The Plan dictates that the medical doctor assigned to review Plaintiff's appeal must be licensed in the state of North Carolina." [DE 21, ¶ 66]; [DE 26, ¶ 66]. Dr. Stepita, though otherwise credentialed, is not licensed in North Carolina. [DE 25, p. 18]. This procedural deficiency weighs in Healey's favor. Of course, that United reviewed an incomplete record also weighs in Healey's favor on this factor.

The seventh factor, the parties agree, is irrelevant to the Court's analysis. The eighth factor concerns whether the fiduciary has a conflict of interest. United served as both the administrator of Healey's claim and the insurer responsible for paying the benefits, which creates a financial

interest in the outcome. This final *Booth* factor is only "one factor among many," and there is no further evidence to suggest the conflict affected United's decision. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 116 (2008).

Having determined that the *Booth* factors weigh in Healey's favor, the Court awards Healey the cost of the procedures. "[R]emand is not required in all instances, particularly where evidence shows that the administrator abused its discretion." *Garner v. Cent. States, Se. & Sw. Areas Health & Welfare Fund Active Plan*, 31 F.4th 854, 860 (4th Cir. 2022) (quoting *Helton*, 709 F.3d at 360, internal quotation marks omitted). Furthermore, "in cases where the fiduciary has committed a clear error . . . a reversal, rather than a remand would be within the discretion of the district court." *Id.* (citing *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 n.6 (4th Cir. 1995), quotation marks omitted).

Defendant argues that even if the Court reverses its denial, Healey is not entitled to recover the full cost of the liposuction surgeries, but only what the plan would have covered. Healey points to *Greenwell v. Grp. Health Plan for Emps. of Sensus USA Inc.*, 664 F. Supp. 3d 617 (E.D.N.C. 2023) for the proposition that a court may reimburse a claimant for out-of-pocket expenses incurred after a wrongful denial of benefits. The Court agrees, noting that United's blanket denial of benefits prevented her from exploring in-network alternatives, and awards Healey $88,060 for the procedures.

Healey seeks prejudgment interest. "ERISA does not specifically provide for pre-judgment interest, and absent a statutory mandate the award of pre-judgment interest is discretionary with the trial court." *Id.* at 1030. "Additionally, where ERISA does not mandate a specific rate of prejudgment interest, the trial court may set the rate at the level established by statute in the state in which it sits." *Greenwell*, 664 F. Supp. 3d at 634 (citing *Duperry v. Life Insurance Company of*

*North America*, No. 5:08-cv-334-FL, 2009 WL 10681745, at *3 (E.D.N.C. Dec. 23, 2009), *aff'd* 632 F.3d 860 (4th Cir. 2011)). Since the Court can discern from the record only some of the dates on which Healey paid for the multiple procedures, the Court defers a judgment on the amount owed in prejudgment interest. Plaintiff is directed to file, within fourteen days of the entry of this order, a supplemental notice accompanied by evidence pertinent to an award of pre-judgment interest, including the amounts plaintiff paid for the procedures and the dates on which she paid. Defendants may file a response within fourteen days of plaintiff's filing, and plaintiff may reply within seven days. Thereafter, the Court intends to award pre-judgment interest at the 8% annual rate set by N.C.G.S. § 24-1 accruing from the dates she paid for the procedures.

The Court also finds an award of attorneys' fees appropriate.

> The five factors [to guide the district court's exercise of discretion in awarding attorneys' fees under ERISA] are: (1) degree of opposing parties' culpability or bad faith; (2) ability of opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1029 (4th Cir. 1993). United's willful blindness to the omitted portions of the appeal and failure to reconsider denial after it gained access to the complete record are sufficient indicators of culpability. An award of attorneys' fees, which United can satisfy, would deter similar conduct. The Court awards Healey attorneys' fees.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment [DE 17] is DENIED and plaintiff's motion for summary judgment [DE 19] is GRANTED. United's denial of benefits is REVERSED. The Clerk is DIRECTED to enter partial judgment for plaintiff, pursuant to Fed.

R. Civ. P. 54(b), in the amount of $88,060. Plaintiff is further awarded post-judgment interest at the rate described by 28 U.S.C. § 1961. Plaintiff is awarded attorneys' fees.

The Court defers the portion of its judgment pertaining to pre-judgment interest. Plaintiff is DIRECTED to file, within fourteen days of the entry of this order, a memorandum accompanied by evidence demonstrating the amount of reasonable attorneys' fees to which she is entitled and identifying the date of each payment for the procedures and the amounts paid. Defendant will have fourteen days to respond, and plaintiff will have seven days to reply.

SO ORDERED, this _10_ day of February 2026.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE